Leorgd 1 when you are ready. You may proceed. Good morning. May it please the court. I'm representing the plaintiff's appellants in this case. And it's an unusual case, at least for me. We have a situation where the district court stayed the case pending a re-exam. And now we have one of the defendants claiming prejudice as a result of things that occurred during the stay. Now, as we put into the moving papers, the original parent case, you had all the defendants jointly petition the court for a stay pending a re-exam that they had initiated. We opposed it. It was granted over our objection. We filed the petition to stay in this case. We filed it not because we wanted to have a stay, but because the district court had already accepted this case under the low number rule. But, counsel, you'd also filed several motions for extension of time representing that all the defendants were in agreement. And that wasn't true, was it? No, it was absolutely true. May I address that? Absolutely. I was under the impression that you had conceded that Harmonic did not at any time recede to the extensions of time that were filed in this case. We did not, absolutely did not concede that. What evidence is there that they did? The evidence is discussed at A412, which is the declaration of Mr. Black, which is quoted in the briefs. Mr. Black testified as to a conversation he had with Harmonic's general counsel, Diane Georgie, in which she consented to the extension of time to serve because the stay had not yet been entered in the Harmonic's case. That's at A412. It's also referred to at A759. The declaration of Sitford Brown, Mr. Brown, at A759, which is a declaration he submitted to the court, said there were email communications which documented the fact that Ms. Georgie had indeed asked for the extension. These were offered to the court. The court did not, for in-camera review, the court did not accept the in-camera review, never asked for it. If the court had, the part of the communication that is not privileged would have shown that on October… This is stuff that's not in the record, so it's not before us. Can you keep going to what's actually stuff that we can consider? No, absolutely. But what is in the record is that the privileged communications were offered by Mr. Brown at A79. And more importantly, that Mr. Black, like Mr. Kleinbart, submitted declarations. You had a total of four declarations, all saying Harmonic, through Ms. Georgie, had indeed asked for and consented to these extensions. I believe Mr. Black's declaration is quoted at the reply at page 12. And it could not be clearer, Your Honor, that we did not, by any means, agree that the defendants had not both consented to the extensions of time to serve the complaint. Let me tell you what my problem is. I agree with you that there's a direct conflict in the affidavits. Your affidavits say that they did agree and request the extension of time. Their affidavits say, you know, I don't have any recollection. I would have recollected if that happened. Okay, so you've got a direct conflict. The problem is that under Rule 43, I guess it's now 43C, the district court doesn't have to hold an evidentiary hearing where they're conflicting affidavits on a motion. Correct? Correct. Right. So the question is, in the circumstances of this case, is there an obligation under Ninth Circuit law to at least explain what the grounds are for the decision, which the district court did not do here? You cite Ninth Circuit cases which seem to say, yes, the judge has to explain. They cite Ninth Circuit cases which they say the judge doesn't need to explain. So what's the rule? If the judge had said here, I've looked at these affidavits. I've concluded that their affidavits are more believable. I find that there was a misrepresentation here in getting the extensions of time. You would agree, wouldn't you, that that would support a motion to dismiss for failure to prosecute? Yes. If there had been a finding. If there had been a finding. So it seems to me that the key question here is whether the failure to articulate the reason for granting this motion is reversible error. And you'd say the cases say he has to explain, particularly where there's a factual conflict in the affidavits. They say he doesn't need to explain. Let me address that. Pretty important question. To begin with, the Ninth Circuit in Henderson v. Duncan, 779 F. 2nd, 1424, says when there are no findings by the district court, the reviewing court, in this case this court, has to review the record independently. So without any findings, without any hearings, the scope of review here, while it's abuse of discretion. But that was going to be my next point. Aren't we still crediting his discretion? Aren't we still, even if we're reviewing it independently, don't we have to recognize that's the district court's call? Yes, you do have to recognize it's a district court's call. So on what basis would we intervene and say we don't agree with the call? Oh, because here what is required on review is this court must independently review the evidence, must independently review the contradictory declarations. But counsel, you didn't request a hearing in this case. Your Honor, you are correct. We did notice it for a hearing, but did not do a formal request for a hearing. Judge Hatter does not have hearings. You don't have to have a hearing, right? Under Rule 43, you don't have to have a hearing. That's not the issue. That's correct. The issue is whether there have to be findings so that we can be sure what the decision was of the district court. The rule is that if there are no findings, then what this court must do is do an independent review. And as you did in a number of cases, I believe... I'm still struggling to... Your independent review notion has to somehow be reconciled with the abuse of discretion standard. How do you do that? Because we believe that an independent review of the evidence will show that no reasonable court could have ruled this way without abusing discretion. Are you saying that he could have reasonably ruled this way if he believed their affidavits rather than yours? That's the problem. No, I don't believe... Wait, wait. What strikes me is that this case turns on whether the district court was obligated to articulate his reasons, or whether he's not obligated to articulate his reasons. Because if the district court here had said, I believe their affidavits, you misrepresented things when you got the extensions of time. I'm dismissing for failure to prosecute. You admitted, I thought a few minutes ago, that that would have been a reasonable decision. Right? The problem is we don't know whether that's what he did. Your Honor, I may have misspoken. In my view, if the court is faced with contradictory declarations, one of which, from our side, is very detailed and quotes specific times and specific conversation, and the other does not, it's no more an appropriate exercise of discretion to credit one declaration over another than it would be on summary judgment. Wait, you're saying that that's true even if he had written that in an opinion? Yes, Your Honor, because it's such a direct conflict because our declarations, Your Honor, if I can be very specific, we gave dates, times, and places. We offered privileged communications that would support us. We had two declarations. They had one declaration. There was nothing specific. And so trying to look at this from an abuse of discretion standpoint, what is it in their declaration, which had no dates, times, and places, that outweighed three of ours, which did have dates, times, and places, plus the privileged communications that we offered? It would seem to me, rightly or wrongly, I've never been in Your Honor's positions, but I can't see how one would credit the single lonely declaration over three specific declarations. Your focus on appeal then, as I understand it, is on basically the summary judgment standard, that there were disputed issues of fact, and it wasn't appropriate for the district court to credit one or the other. You're not challenging under Ninth Circuit law the district court's ability to rule without articulating in detail an opinion? That's correct, Your Honor, but I think you're trying to simplify our approach. You may have not credited some other parts of our appeal. One is that the Ninth Circuit requires a five-part test to justify the egregious dismissal with prejudice, which we don't see here. But you're not suggesting that the absence of a written opinion necessarily results in a finding the district court didn't apply the five-part test? No, not in and of itself. So you agree that he didn't have to make findings? I agree he didn't have to make findings, but I do believe that without making the findings, it's impossible to uphold his decision of use of discretion because we have no idea what his reasoning was. That sounds as though you're saying you need to make findings. You say one thing, then you say another. I don't mean to, Your Honor. There are cases such as the Lemley case that Your Honor was on where it came up and it was an unreported decision and was sent back down from the same judge, Judge Adder, where he didn't do findings. You sent it back. It came back up, and we cited it in a letter to the court and briefly gave six one-line reasons. Did he have to make findings, or didn't he have to make findings? It's a critical question. Under Ninth Circuit law, no, but under the precedent of the district court, he did not need to make findings. That's correct, Your Honor. He did not have to make findings. Under Ninth Circuit law, when he fails to make findings, it requires independent review, independent review of each element. But this court, in the Lemley court- You mean we don't afford discretion to him if he hasn't made findings. Is that what you're saying? No. As I understand the law, it says the abuse of discretion standard remains. Counsel, I think you're citing from the, it seems to me, the seminal case on point, Henderson v. Duncan. That's correct, Your Honor. We therefore review the record independently to determine whether the court abused its discretion. Exactly. That's what I was trying to say. Can I- I'm sorry if that wasn't clear enough. If it's okay, can I move you on to the secretary? Absolutely. Is that okay? You're running short on time. Absolutely. What evidence, because I read in your brief several assertions that the secretary had to be the one upon which you served because either there was no one else there or no one else would come forward to accept service, something along those lines. I'm clearly paraphrasing. You're paraphrasing, Your Honor. But I just didn't, the problem was you all have the burden of proving this, and I didn't see any evidence to support that. I saw her declaration that says they didn't ask for anyone else. They didn't ask me if I could accept service. They didn't blah, blah, blah, blah, blah, and that I don't see your affidavit or declaration suggesting from either the process server or anyone else suggesting the contrary, and that's the part that is troubling me. We relied strictly on the form the process server gave us, which said that they had served this person at the place of business, and we did not come forward with a declaration. Instead, in the papers, we relied on a number of cases that said that service on a secretary can be deemed good service, and particularly here, Your Honor. You're talking about direct mail? Direct mail. Okay, but in the direct mail context, there were a whole bunch of things that the court pointed to about why the secretary is sufficient because you have to agree the secretary is not a manager or one of the people articulated in the rules who can accept service. There is a rule that clearly applies to this, and the secretary is not one of the people clearly articulated, but the Ninth Circuit has concluded, nonetheless, under certain circumstances, a secretary could rise to the level of qualified. Under direct TV, you look at the peculiar circumstances of each case. Direct mail are you talking about? Direct mail. Okay, you said direct TV. I want to make sure I'm not losing, you know, a case in my mind. I want to make sure we're on the same one. I'm sorry. That's okay. Under direct mail, you look at the circumstances of each case. It's clear here that they got the papers. In fact, they responded to the papers by filing their motion to dismiss. There's no question they received the papers. There's no question that regardless of whether the receptionist was or was not authorized, she promptly took the papers back to people who were in charge, who promptly gave them to their lawyers, who promptly filed the motion. So there's no question that service was effective as to whether it had to be more formal. You would agree with me, wouldn't you? There are lots of Ninth Circuit cases that say service, actual receipt, or actual knowledge are not enough. And, in fact, even the direct mail case, which certainly does say actual receipt is a factor, by the way, it says it's also true that actual receipt of process by the correct person may be a factor in finding the process valid when there are other factors that make process fair. And so that's what I'm trying to figure out is since that can't be dispositive, what are the other factors that would make process fair in this case? Well, what makes it fair, Your Honor, is that the process server came, the process server, rightly or wrongly, believed it was appropriate, gave us the form. It's not like we served this person directly. Well, you hire a process server and say they're your agent for service purposes. So their mistakes, unfortunately, fall back on your shoulders. Yes, and it would be one thing if there was no effective service after that. They hadn't received it. But where it's here, they have the complaint. They knew what it was. They have all of the papers. And what we're dealing with is ha-ha, gotcha. To us, in technicality, I would respectfully say... She worked for one of the officers, right? Correct. She worked for the company. Correct. And so... You don't rely on that? I don't what? You don't rely on that? Well, we do rely on that. We rely on the same thing the process server did. They went to the place of business and served the person. And as to what happened there, we frankly don't know. We don't have his declaration. We relied on it. And what we know is that they had the papers. And, you know, to us... But they had the papers is not enough. I'm looking at this Ninth Circuit case right now that was cited, Audio Toys v. Smart AV. However, neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction, absence of substantial compliance with the requirements of the rule. And so there are lots of Ninth Circuit cases that say the fact that they actually got it is not determinative. And I'm just worried about what the other factors are because you had the burden of proof. And for whatever reason, you chose not to put any declarations forward. The Ninth Circuit, in a number of the cases cited in our papers, Your Honor, makes clear that it's a flexible test that the reviewing court can look at from a point of view of fairness. Here, when they had the papers, they filed a motion very promptly based on the papers. There is no fairness in saying that service on the receptionist who worked for the officer was not adequate service. The issue... I'm sorry, Your Honor. May I ask how much time I have left? You've exceeded your time, Mr. Lord. Let's do this. We'll give you three minutes of rebuttal time back. We've helped you consume your time. I appreciate it. And we'll give Mr. Toren an extra three minutes should you need to use it. Thank you very much. So we'll hear the rest after with your three minutes that you'll have on return. I appreciate it. Mr. Toren. Thank you, Your Honor. You have a little extra time if you need it. Thank you very much, Your Honor. Good morning. Peter Toren on behalf of Harmonic. I'd like to start just by pointing out, first of all, that it's very clear that in the Ninth Circuit, Your Honor, that the district court did not have to make any findings. I don't agree with that, but they seem to have waived the argument. I think the case and these other cases suggest that when there's conflicting evidence on multiple grounds, that they do have to make findings. Well, Your Honor, getting to the conflicting evidence, Your Honor suggests that there's conflicting evidence with regard to the misrepresentations that may or may not have been made. There is conflicting evidence, isn't there? Yes, Your Honor. Well, I would say that there's enough in the record to establish that you can give credibility to our deck. There are directly conflicting affidavits. Your affidavits suggest that there was no consent. Their affidavits say explicitly that there was, right? Yes, Your Honor, that's correct. How do we know what the district court ruled here? You gave multiple grounds for dismissal for failure to prosecute. Some of those are pretty tenuous, and there's a direct conflict on a key issue. How do we know what the district court found? Because the standard is you have to look at the record. Knight-Circuitous in the Henderson case says look at the record as a whole, that you're allowed to independently look at the entire record, and based on the entire record, was there an abuse of discretion? And even setting aside— Assuming everything in your favor? No, Your Honor, everything in the record, but you still have to give discretion to the district court. I don't understand. What do we assume about the fact finding? You have a conflict in affidavits. Do we assume that he decided for you on the ground of misrepresentation? He didn't say so. Do we assume that he credited your affidavits rather than theirs? He didn't say so. How do we know what he ruled? Your Honor, even setting aside the question of, and I disagree respectfully with Your Honor's characterization that they're conflicting affidavits. You disagree with that? Yes, Your Honor. I thought you agreed that they were conflicting. No, Your Honor. I said putting that aside. Earlier. No conflict in the affidavits? No, Your Honor, because you can look at what was said in the first affidavits by Myron Kleinbart, and then in the later affidavits what was said by Mr. Black. And Mr. Kleinbart made an affidavit that clearly was not on personal knowledge. He never said that it was on personal knowledge. Based on the Black declaration, he comes later on and says that he had the discussions with Diane Georgie, not Myron Kleinbart. So there's certainly that the earlier. He doesn't say that Kleinbart didn't have discussions. He said he had discussions. Well, Kleinbart. Kleinbart said they consented, right? Kleinbart goes further than that, Your Honor. Kleinbart even goes to say that Harmonic asked Litton to seek an extension in order to pursue or allow. That's why there's a conflict in the affidavits. He said they asked me to do it, they consented, and your affidavits say they didn't. Well, Your Honor, what I'm trying to say. That's not a conflict in the affidavits? I think it's a conflict. But the court certainly is allowed to weigh everything that the affidavits do offer conflicting interpretations. But the court is allowed to weigh the other facts in this case in conjunction with the entire record as this court is instructed to do. How do we know that's what the court did? Well, we know that the court dismissed the case with prejudice. And besides the misrepresentations, there's a great deal of non-conflicting evidence in this matter that would more than establish that there was an absolute failure to prosecute this case.  You agree, I assume, that if they had legitimate extensions of time to serve and that there was a legitimate stay, that they can't be dismissed for failure to prosecute pursuant to extensions of time and a stay of proceedings, right? Well, I disagree. I agree with the legitimate extensions of time. I disagree with the point as to the legitimate motion to stay because there's the Sixth Circuit case, the estate of Presser that we cite in our brief, that very clearly says that a motion to stay a case is not grounds, does not excuse a failure to serve. They got the stay. They weren't allowed to serve. OK. Well, all right. So let's put that aside. Even if we put that aside, Your Honor, there's still more than enough time for the failure to serve. At the time the court issued the stay motion in this case, 355 days had elapsed. They weren't allowed to serve during the period of the stay, right? It was forbidden. That's correct. But, Your Honor, may I please? It's up to the point before the court had issued the stay. I'm not even talking about the stay period. But up until June 28, 2004, 355 days had elapsed, almost one year, and they had taken no steps to serve it. And then, Mr. Thorne, I'd like to go just a little bit different place, and that is what's the real prejudice here? You certainly were in negotiations with them continually. The records replete with communications back and forth between your counsel and theirs. You certainly were monitoring the Tyco case. Aren't we getting a little technical here? Let's just get to the merits. No, Your Honor. I would respectfully disagree. There was no settlement negotiations between the summer of 2004 sometime until January. That's the course of the stay period. Well, it's really the entire stay period. And there was a threat or an email from Myron Kleinbart to Diane Georgie, I believe it was July 23, 2005, in which he said that unless we work out a settlement negotiations by September 1st of this year, we're going to seek to serve you and move ahead with the case. They never did that. There was no further settlement discussions. So at that point, there's an expectation that they weren't going to be suited anymore. My question is, what is the prejudice? What did you really lose here? It's pretty clear that they have accused you in one form or another, and there have been efforts to settle, and then there have been stays which may or may not be legitimate. Where is the prejudice to you? Well, the prejudice to us is the prejudice of lost witnesses' memories, lost evidence. And here, in plaintiff's own words, we were dealing with an inventor here, John Shaw. Early on, they had opposed the stay in the Tyco case with the claim that these were patents from the 1980s, and one of the inventors is an inventor in his mid-80s, suggesting that he's not in the greatest of health, and certainly that used that in opposition to a stay. And then they go ahead in our case, and when they're asking for the stay, they said there would be no harm to the defendants. We were deprived of the right to take his deposition, to question him, to move ahead, to any input on how we wanted this case to go forward. I mean, courts have talked about lost memories. Here, we're going to a much more extreme example with one of the two inventors in the case is now dead, and we can never take his deposition. And, I mean, there are many cases that suggest that an inventor's testimony is relevant to issues of prior art, enablement, many other issues that may arise in patent cases. Why can't that be taken care of by another kind of order? Why does that justify the dismissal? In the Ninth Circuit, you've got to look at alternatives, right? Right. Well, that's right up to a point, Your Honor. All the cases that required, really looked at less drastic alternatives were questions in sua sponte cases, was whether the district court looked at alternatives. The judge here didn't have to look at alternatives? The judge did look at alternatives. But did he have to look at alternatives? Yes, he had to look at alternatives. And the appellees in this case were given the opportunity to propose reasonable alternatives in their motion papers in opposition. But we don't know why he rejected them. Well, we do know, Your Honor, that the appellees only proposed one alternative. That much we do know. So to say that he rejected, we can say that he rejected the only one alternative that was proposed. We do know that he obviously found that that was not sufficient to protect appellees' interest in this case, because the only alternative that the appellants offered was monetary sanctions. They offer now other alternatives in their appellate briefs. We know all of this when there's no real decision of record other than the wave of the hand. Well, it's more than that, Your Honor. He says in his order that it's based upon the moving and opposition papers filed in connection with the motion to dismiss. So we do know that he reviewed, I mean, based on what he said, he reviewed the papers both sides submitted. And we do know from the fact that he found and dismissed the case with prejudice that less drastic alternatives would not remedy the prejudice to Harmonic and would not deal with the fact that this case lasted for over four years, or close to, excuse me, Your Honor, close to four years without service upon Harmonic. But your client knew the complaint had been filed right from the beginning, right? Yes, Your Honor. We did know that the complaint had been filed. But we also were the fact, as I said earlier, that in this email, this threat made to us that unless we settled the case within a discrete period of time, by September 1st, they would serve, they would seek to lift the stay, and they would service with the complaint. They didn't do that, Your Honor. There was no settlement discussions. We had a legitimate expectation. If you were worried about your rights being prejudiced, why didn't you just bring a DJ? Your Honor, I don't think there, I'm aware of no authority that based, certainly based on the facts as we know it, the expectation in 2000 and 2006 that there was no current action that we would go out there and have to bring a DJ action. I mean, we had an expectation, a legitimate expectation at that point that the case had gone away. There's no authority that suggests that under those circumstances we would be required to affirmatively take steps. We weren't aware, we weren't served with the status reports in this case in which in March of 2006 it was disclosed that John Shaw had died. We weren't privy to those facts as to how this may prejudice harmonics. And respectfully, Your Honor, I don't think we were obligated at all to have to institute a DJ action. And I don't even know if we could under those circumstances. You know that the action remained pending, right? No, Your Honor. It didn't? We did not know that. How would we know that? There was no communication between. What was the basis for assuming that it didn't remain pending? Because we hadn't heard from them in three years. I mean, if you are threatened, if you are explicitly told that unless we reach settlement by September 1st, a date certain, we're going to serve you with a complaint, and then no complaint is served, there's no notice from the other side, there are no settlement negotiations from the other side, approaches, anything, that based on that I think it's a legitimate expectation that you would be. In Aukerman we say that becomes something you can count on after six years. Why are you so sure that your period of time gives you no expectation? You mean you're referring to a laches period, Your Honor? I'm referring to kind of a laches period, and it seems somewhat analogous here. I think, I mean, perhaps that it's something you couldn't perhaps take to the bank with it, but it's certainly a reasonable expectation that after not, after... Particularly when you know that they're tied up in another piece of litigation, and they're tied up in re-exams at the patent office, why would you think it's gone away? Because we didn't know that at that point, Your Honor, we didn't know that they were tied up in the patent office. You're assuming... You knew that there was a stay in the Companion case. You were a lawyer in the Companion case, right? Your Honor, but there's no authority to suggest that we have to... Did you know that there had been a stay in the Companion case? Did I personally know that, or did the law firm? The firm who was representing JDSU in the Companion case knew that there was a stay in that case. That is correct, Your Honor. It kind of stretches credulity to think you didn't know what was going on. With this much at stake, it seems like it's pretty easy to check and find out. You just call somebody in the Tyco case and say, hey, by the way, what's going on? Your Honor, it... It would be almost a failure of due diligence not to do so. Well, it may stretch credulity, but it is... There's nothing in the record to indicate that we were aware of that, and that there were... Well, certainly the burden here, I mean, the burden... There's nothing in the record to indicate you weren't, right? That's correct, Your Honor. There's nothing either way. That's correct, Your Honor. But the burden here is not on us. The burden of persuasion as to all these facts is on appellants. Counsel, don't we have to defer to the district court with regard to whatever period of delay he believes will render his docket unmanageable? So maybe the six-year notion is all fine and dandy in the latches concept where no suit has been filed, but isn't part of this process to protect the district court's ability to manage his own docket? So maybe the latches analogy isn't directly applicable to the situation where a complaint's actually been filed but not served. I think that's true, Your Honor. Your Honor speaks to the second of the five factors that the Ninth Circuit takes into consideration like that. And just for those purposes, to illustrate that there was... The appellants can minimize the impact on the docket of a case that was stayed. But if you look at the docket entries, the docket in this particular case, up to the point that the motions for dismissal were filed, there were 34 docket entries. And while that's not, in a huge case, that's not a great many, there is an impact on the trial court's docket. And certainly the trial court is in the best position, and the Ninth Circuit has sat on that point, that it's really a decision that it should be left to the consideration of the district court as to whether... But he stayed the action. He insisted on staying the companion case, and he stayed this action pending the re-exam. So during that period that the stay was in effect, certainly he didn't want anything to happen, right? Your Honor, he stayed this case based on misleading evidence. Stayed the case or granted the extensions? Stayed the case on a material omission. The material omission, Your Honor, was the fact that in this case they stated that it would not prejudice Harmonic. They opposed the stay in the Tyco case and the larger case on the basis that the inventor was ill. And even that, there were other misrepresentations that they made to the court. They filed a status report, Your Honor, in September of 2005. And in that status report, they stated that because the patent office had issued a notice that was going to reissue the patent, that they were going to lift the stay and commence settlement discussions within 30 days, Your Honor. That's in September of 2005. They did neither. They couldn't lift the stay. Only the court could lift the stay. Your Honor, they could have filed a motion to lift the stay. They did ask to have the stay lifted twice. Not in this case, Your Honor. Yes, they did. No, Your Honor. In the status report. In the status report, but I don't think that... Yes, so they did ask to have the stay lifted, right? Your Honor, I don't... Isn't that correct? That's what was stated in the status report, Your Honor. You just said they didn't say that. Well, I was going to say, Your Honor, they did not file a formal motion to lift the stay. And that's what I meant to say, Your Honor. I wasn't respectfully arguing with you on the point. There were statements in the status report that they had intended that they were going to lift. They asked the court to lift the stay. But they never filed a formal motion like they did in the Tyco case. They buried that request in the back of status reports. And, in fact, the district court in this case believed that the stay in this case had already been lifted because it ordered the defendant's harmonic to respond to one of the status reports in October of 2006. And at that point, a party that you would think wants the case to go forward would have told the district court, listen, district court, they had never been served. But they didn't do anything, Your Honor. They kept quiet about the entire thing. So the case was delayed even further until January of 2007 when the district court, on their own, realized that even after three and a half years, harmonic had never been served in this case. Thank you, Mr. Torn. Thank you, Your Honors. Mr. Lord, you have three minutes. May it please the Court. Before this panel, my opposing counsel says there's prejudice. But in the companion case before the same judge involving his other client, he says there's no prejudice. We submitted to Your Honors the papers filed by harmonic's counsel saying there was no prejudice and please do not lift the stay, please reimpose the stay. You can't have it both ways. You can't have the same counsel for one party saying there's prejudice if there's a stay pending reexamination and have the same counsel tell the same judge there is no prejudice, please reimpose the stay. You can't have it both ways. We submitted those papers to you. They opposed Your Honor's review of them, and as I understand it, those are being considered by the court. They are before Your Honors. We submitted them to you. And how you reconcile that contradiction on prejudice, I don't know. Were you opposed to staying the other case and then actually request one here? Yes, we opposed the stay, and the court disagreed with us. We pointed out how old our inventor was, and unfortunately, because of that stay, we lost our inventor. They were not prejudiced. We were. That inventor can't help them. He could have helped us. They have said to the court, the same court, there's no prejudice. You don't know whether the inventor could help you. Look, we've all seen depositions of inventors go crazy, right? So the inventor may have helped you. He may have hurt you. We can't be sure because the deposition didn't happen. We know that this counsel told the same judge, there is no prejudice. Please put in the stay. Certainly, I would agree with you that if those statements were made in the context of this case, they ought to be held against it. And it's very difficult because certainly the same issue here. But you wouldn't suggest. I mean, you represent a lot of clients. And one day you might be here arguing one side of a coin, and the next day you might be here arguing the exact opposite. And we shouldn't hold you accountable, although one of us might. But we shouldn't probably if it's different clients, different settings. One of us might ask you about it at least. I would not talk out of both sides of my mouth to the same judge about the same patent on two cases low numbered to the same judge. I'd assume that I would probably be thrown out of the courthouse for doing that. If I can address one point that was raised a little earlier by Judge Dyke, I'd like to cite to the court one of its own decisions. Libus v. United States, 314 F3rd, 1362, where your honors reversed the case as abuse of discretion because there had been no findings. In that case, your honors cited the Ninth Circuit's decision in Hayes, which is contradictory to the Hendricks case. The Ninth Circuit decision in Hayes, 785 F2nd, 1456, notes that the trial court gave no explanation of the basis for its decision. And that as a result, it was impossible to determine whether the district court abused its discretion when the order below contains no information or explanation. Is that a 41B case, though? I beg your pardon? Is that a 41B case? Your honor, I'm just citing it for your honor's decision. I don't know. Right. No, your decision. The Libus decision is a decision involving the International Trade Commission. But your honors are citing Hayes, a Ninth Circuit decision, which says when there are no findings, it's an abuse of discretion remand. So you have the Ninth Circuit in Hendricks. Is the Ninth Circuit case the 41B case? I don't know, your honor. I'm sorry. The Ninth Circuit in the Hayes case says remand for findings. The Ninth Circuit in Hendricks says do independent review. But regardless if it's independent review or remand for findings, we don't believe you can find that the five-part test has been satisfied. And I would respectfully request at the very least, your honors, consider remanding for hearing and findings where witnesses' credibility can be evaluated. And we can submit in camera those privileged materials which actually quote their declarant as contrary to the declarations. Thank you, Mr. Turner. You're welcome. All rise. Your Honor, the court has adjourned until tomorrow morning. Good day.